IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-180-FL

| | |
|---|---|
| MARGARET REAVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| AMERICAN HOME MORTGAGE ) | |
| SERVICING, INC. *(AMHSI)*, and ) | |
| OCWEN LOAN SERVICING LLC, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motion for summary judgment or in the alternative to stay the action [DE-57] filed by Defendants American Home Mortgage Servicing, Inc. ("AHMSI") and Ocwen Loan Servicing LLC ("Ocwen") (collectively, "Defendants"). Plaintiff Margaret Reaves ("Plaintiff"), proceeding *pro se*, filed a response in opposition [DE-65]. Accordingly, the motion is ripe for decision and is considered here as a recommendation to the district court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c). For the reasons set forth below, it is recommended that the motion for summary judgment [DE-57] be denied.

## I. STATEMENT OF THE CASE

Plaintiff, proceeding *pro se*, filed this action against Defendants on April 28, 2015, alleging that Defendants violated federal, state, and common law due to their actions taken in connection with servicing Plaintiff's mortgage loan [DE-1], and filed a supplement to the Complaint on May 15, 2015 [DE-7]. Defendants filed an Answer on June 16, 2015. [DE-14]. Counsel for Plaintiff entered an appearance and filed an Amended Complaint with leave of court on December 14, 2015. [DE-38]. Defendants filed an Answer to the Amended Complaint on December 28, 2015. [DE-39].

The court granted a request to withdraw by counsel for Plaintiff on May 11, 2016, and Plaintiff has proceeded *pro se* since that date. [DE-49]. On November 30, 2016, Defendants filed the instant motion for summary judgment or in the alternative to stay the action [DE-57]. Defendants seek to dismiss Plaintiff's claims with prejudice based on the *Rooker-Feldman* doctrine or in the alternative request to stay the instant case pending resolution of a prior-filed state court case. *Id.* Accordingly, while Defendants have styled their motion as one for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, they actually seek dismissal of Plaintiff's claims pursuant to Rule 12(b)(1) for lack of subject-matter jurisdiction.

## II. STATEMENT OF FACTS

Plaintiff's claims relate to actions taken by Defendants in the course of servicing her mortgage loan, including during foreclosure proceedings in North Carolina state court. Plaintiff and her now-deceased husband obtained a loan for $117,600.00 from First Greensboro Home Equity, Inc. on or about December 23, 2002, secured by Plaintiff's residence. Am. Compl. [DE-38] ¶¶ 17, 19. At the time of origination, Option One was the servicer of the loan, and AHMSI became the servicer on or about May 2008. *Id.* ¶¶ 20, 36. AHMSI changed its name to Homeward Residential Holdings in December 2012, and was acquired that same month by Ocwen's parent corporation (Ocwen Financial Corporation). *Id.* ¶¶ 2–3. On or about June 7, 2013, Plaintiff received a letter from Ocwen on behalf of Homeward Residential informing her that she was delinquent on the loan by 21 payments. *Id.* ¶ 54. According to Plaintiff, Defendants violated federal, state, and common law in connection with servicing Plaintiff's mortgage loan by wrongfully taking the following actions:

> (i) adjusted escrow withholdings in amounts and at times that are not permitted; (ii) failed to respond to inquiries by [P]laintiff within the time required by law; (iii) when they did respond, Defendants failed to do so timely as required by law; (iv) failed to

properly credit payments received from [P]laintiff; (v) failed to notify Plaintiff [that] payments received from her were not being credited, but rather held for an unreasonable duration of time; (vi) failed to return funds which Defendants [were] under [an] obligation to return; (vii) making written and verbal false and misleading statements as to the amount owed and status of Plaintiff's account; (viii) notified Plaintiff that they and other Defendants had commenced foreclosure or other proceedings, notwithstanding that they were not permitted to commence those proceedings; (ix) failed to timely and clearly advise Plaintiff of changes to her obligations predicated upon Defendants' files; and (x) frustrated and/or harassed Plaintiff who attempted to find out more information concerning her mortgages and her rights and obligations [thereunder].

*Id.* ¶ 14.

Specifically, Plaintiff claims that Defendants violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, by failing to respond to qualified written requests sent by Plaintiff, Am. Compl. [DE-38] ¶¶ 60–66; violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, by failing to provide required notices, Am. Compl. [DE-38] ¶¶ 67–71; violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, by making false and misleading representations to Plaintiff about the character, amount, and legal status of her debt, Am. Compl. [DE-38] ¶¶ 72–80; violated the North Carolina Fair Debt Collection Practices Act ("NCDCPA"), N.C. Gen. Stat. § 75-50 *et seq.*, by engaging in unfair acts in collecting Plaintiff's debt, Am. Compl. [DE-38] ¶¶ 81–87; violated the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, by failing to properly credit Plaintiff's account, charging unauthorized fees and costs, and sending false and misleading communications, Am. Compl. [DE-38] at ¶¶ 88–94; breached Plaintiff's contract by improperly crediting Plaintiff's account, charging unauthorized fees and costs, and attempting to foreclose on Plaintiff's residence when she was not in default, Am. Compl. [DE-38] ¶¶ 95–99; breached the implied covenant of good faith and fair dealing by acting to deprive Plaintiff of her contractually-bestowed benefits and preventing her from

3

fulfilling her contractual obligations, *Id.* ¶¶ 100–04; and acted negligently in the course of servicing Plaintiff's mortgage loan, *Id.* ¶¶ 105–09. Plaintiff seeks monetary relief, to include actual, statutory, compensatory, and punitive damages, costs, and attorney's fees. *Id.* at 23–24 ¶¶ 1–10.

On May 29, 2014, the trustee for Option One initiated foreclosure proceedings against Plaintiff's residence in Wake County Superior Court. Notice of Hr'g, No. 14 SP 1727, App. to Defs.' Stmt of Material Facts ("SOMF") Ex. B [DE-62-2]. Plaintiff had previously filed a complaint against AHMSI in Wake County Superior Court on April 1, 2014 (the "stayed case"), alleging that AHMSI failed to properly credit her mortgage payments in violation of the North Carolina UDTPA. *Reeves v. Am. Home Mortg., Inc.*, No. 14 CVS 4069, App. to Defs.' SOMF Ex. A [DE-62-1]. On December 29, 2014, the Wake County Superior Court stayed that action pending resolution of the foreclosure proceeding. Dec. 29, 2014 Order, App. to Defs.' SOMF Ex. C [DE-62-3]. According to Defendants, the foreclosure proceeding is still ongoing in Wake County Superior Court. Defs.' Mem. [DE-59] at 2.

Subsequently, Plaintiff filed a complaint against Wells Fargo Bank, Trustee Services of Carolina, and Brock and Scott in Wake County Superior Court on June 25, 2014, alleging that the defendants did not properly credit her payments for property taxes and as a result she overpaid those taxes, and seeking $25 million for civil rights violations, mental anguish, and health issues, and the deed to her residential property. *Reeves v. Wells Fargo Bank*, No. 14 CVS 8427, App. to Defs.' SOMF Ex. D [DE-62-4]. On December 29, 2014, the Wake County Superior Court dismissed that action pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Dec. 29, 2014 Order, App. to Defs.' SOMF Ex. E [DE-62-5].

4

Plaintiff filed a third action in Wake County Superior Court on August 26, 2014 against Sand Canyon Corporation, Dale Sugimoto, Brock and Scott, and Ocwen Loan Servicing, alleging that the defendants filed a fraudulent affidavit with the Wake County Register of Deeds on April 7, 2014, and seeking $25 million for civil rights violations, citizen's rights, and constitutional rights, mental anguish, and the deed to her residential property. *Reeves v. Sand Canyon Corp.*, No. 14 CVS 11169, App. to Defs.' SOMF Ex. F [DE-62-6]. On December 29, 2014, the Wake County Superior Court dismissed that action pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Dec. 29, 2014 Order, App. to Defs.' SOMF Ex. G [DE-62-7].

### III. STANDARD OF REVIEW

#### A. Rule 56–Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the nonmoving party then must affirmatively demonstrate, with specific evidence, that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

#### B. Rule 12(b)(1)–Lack of Subject Matter Jurisdiction

Pursuant to Rule 12(b)(1), a court must dismiss all or part of an action over which it lacks

5

subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Whether subject matter jurisdiction exists is a threshold question that must be addressed by the court before considering the merits of the case. *Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999). Defendants may present a motion to dismiss for lack of subject matter jurisdiction in two ways: (1) by arguing that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based" or (2) by "contend[ing] that the jurisdictional allegations of the complaint [are] not true." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). In the first instance, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.* (footnote omitted).

In reviewing a motion to dismiss, a court is required to consider the complaint in the light most favorable to the plaintiff and to accept as true all well-pleaded factual allegations. *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted). Additionally, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted). The court "may properly take notice of matters of public record" and "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Phillips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted); see also *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (considering a statement attached to a motion to dismiss where "it was integral to and explicitly relied on in the complaint and because the plaintiffs do not challenge its authenticity.") (citations

omitted). Exhibits that may be incorporated within the pleadings under Rule 10(c) include documents such as affidavits, letters, contracts, and loan documentation. *Eagle Nation v. Mkt. Force, Inc.*, 180 F. Supp. 2d 752, 754 (E.D.N.C. 2001) (citation omitted). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c) . . . the exhibit prevails." *Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citation omitted).

## IV. DISCUSSION

### A. Motion to Dismiss–*Rooker-Feldman*

Defendants contend that the court lacks subject-matter jurisdiction to consider Plaintiff's claims pursuant to the *Rooker-Feldman* doctrine. Defs.' Mem. [DE-59] at 4–6. Specifically, they argue that her claims "undisputedly concern the dismissed State Court actions, the Foreclosure Proceeding, and the related Stayed State Court Action. Plaintiff disputes the foreclosure proceeding against her property, and the filing of the instant Amended Complaint represents a new front in her efforts to fight the foreclosure." *Id.* at 4. Defendants contend that all requirements of the *Rooker-Feldman* doctrine are met because Plaintiff was the "state-court loser" as to the two dismissed state court cases; Plaintiff alleges that her injury was caused by the foreclosure action; the two state court cases were dismissed in 2014 (in addition to the court order staying the other state court action), all before the filing of the instant case; and "Plaintiff is expressly attacking the dismissals entered in the State Court actions by attempting to have this Court re-litigate issues already resolved (and not appealed) by the State Court." *Id.* at 5. The undersigned has reviewed Plaintiff's filings in response to Defendants' motion for summary judgment. *See* Pl.'s Mem. [DE-65]; Pl.'s App. to SOMF [DE-66]; Pl.'s Exs. [DE-67 to -70]. Plaintiff's filings consist of

7

summaries or handwritten copies of statutes, regulations, and various correspondence related to her mortgage, including photocopies of correspondence, postal service tracking information, news articles, loan documentation, checks, cashier's checks, and documents from other lawsuits and foreclosure actions. *Id.* Plaintiff does not address Defendants' arguments as to subject-matter jurisdiction and the motion to stay; instead, she has produced evidence and argument in support of the underlying allegations of the complaint. *Id.*

Under the *Rooker-Feldman* doctrine, federal courts lack subject-matter jurisdiction to sit in appellate review of judicial determinations made in state courts. *See D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923). Jurisdiction to review such decisions lies with superior state courts and, ultimately, the United States Supreme Court. *See* 28 U.S.C. § 1257(a).

> The *Rooker-Feldman* doctrine bars state court losers from seeking review in federal court of "injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under this narrow doctrine, federal courts may entertain claims previously examined by a state court, so long as those claims do not seek review of the state court decision itself. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 233 (4th Cir. 2015). Where a federal complaint raises claims independent of, but in tension with, a state court judgment, the *Rooker-Feldman* doctrine "is not an impediment to the exercise of federal jurisdiction" simply because "the same or a related question was earlier aired between the parties in state court," and any tension created by the concurrent federal and state proceedings "should be managed through the doctrines of preclusion, comity, and abstention." *Thana v. Bd. of License Comm'rs for Charles Cty., Md.*, 827 F.3d 314, 320 (4th Cir. 2016) (internal quotation marks omitted).

*Vicks v. Ocwen Loan Servicing, LLC*, 676 F. App'x 167, 168 (4th Cir. 2017) (per curiam) (internal parallel citations omitted) (holding that the *Rooker-Feldman* doctrine did not prevent the plaintiffs' RESPA claims despite a previous foreclosure action in state court).

8

The *Rooker-Feldman* doctrine prevents federal courts from considering "issues actually presented to and decided by a state court, but also . . . constitutional claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (internal quotation marks and citations omitted). After the Supreme Court's *Exxon* decision, however, the Fourth Circuit clarified that the "inextricably intertwined" language does not create an extra test to determine whether *Rooker-Feldman* applies—that language simply states the conclusion that "if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Va. Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006) (citations omitted). In sum, "[i]f a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Exxon*, 544 U.S. at 293.

> Preclusion principles are designed to address the tension between two concurrent, independent suits that results when the two suits address the same subject matter, claims, and legal principles. Whereas the *Rooker-Feldman* doctrine, by contrast, assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment.

*Thana*, 827 F.3d at 320.

As an initial matter, Defendants assert that the foreclosure proceedings are still ongoing in Wake County Superior Court, and nothing in the current record indicates otherwise. Defs.' Mem.

9

[DE-59] at 2. Moreover, there is no publicly-available electronic record of the foreclosure proceedings. *See* Fed. R. Evid. 201. Thus, to the extent Defendants assert that *Rooker-Feldman* applies based on the foreclosure proceeding, this argument is without merit where the state court has not entered a judgment in that proceeding. *See Thana*, 827 F.3d at 319 (noting that the *Rooker-Feldman* doctrine "holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'") (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). Defendants argue that *Rooker-Feldman* still prevents the exercise of federal jurisdiction over state court judgments even when those judgments are on appeal in state court, pointing to *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) for the proposition that "the fact that the decision of a state court is winding its way through the state appellate system does not subject it to federal review in the meantime." Defs.' Mem. [DE-59] at 5. It is unclear whether *Dunlap* remains controlling on this point after *Exxon* and *Thana*. *See Young v. Ditech Fin., LLC*, No. PX 16-3986, 2017 WL 3066198, at *3 (D. Md. July 19, 2017) (noting that the *Exxon* court was clear to point out that in both *Rooker* and *Feldman* the plaintiffs had filed federal lawsuits after the state proceedings ended and refusing to apply *Rooker-Feldman* where the plaintiff's state court appeal was still pending). Regardless, this case is distinguishable from *Dunlap* because according to the current record, there has been no judgment in the foreclosure proceeding in the first instance. *See Dunlap*, 290 F.3d at 195 (at the time the Fourth Circuit considered the case, the state court order was on appeal to the West Virginia Supreme Court of Appeals). Accordingly, as the state foreclosure proceeding is still ongoing, it cannot serve as a basis to support applying the

*Rooker-Feldman* doctrine here.[1]

Defendants also argue that Plaintiff is essentially seeking appellate review of the two dismissed state court actions. Defs.' Mem. [DE-5] at 59. The instant case, however, was not filed in federal court "*specifically* to review [those] state court judgment[s]" as Plaintiff is not alleging that the state court wrongly dismissed or decided those cases. *Thana*, 827 F.3d at 320. Rather, Plaintiff has presented independent claims that overlap to some degree with the claims asserted in the two dismissed state court actions, and any tension between this case and those dismissed actions is properly addressed through the preclusion doctrine. *Id.* ("Preclusion principles are designed to address the tension between two concurrent, independent suits that results when the two suits address the same subject matter, claims, and legal principles."). In the instant case, Plaintiff's claims all relate to Defendants' actions taken during the servicing of her mortgage loan, including the fact that Defendants failed to properly credit her payments for property taxes. Am. Compl. [DE-38]. In the dismissed state court actions, Plaintiff raised similar arguments about overpayment of taxes and failure to properly credit her account. *See Reeves v. Wells Fargo Bank*, No. 14 CVS 8427, App. to Defs.' SOMF Ex. D [DE-62-4]; *Reeves v. Sand Canyon Corp.*, No. 14 CVS 11169, App. to Defs.' SOMF Ex. F [DE-62-6].

However, in the instant case, Plaintiff has raised claims independent of those raised in the dismissed state court actions and the *Rooker-Feldman* doctrine does not act as a bar to the court's

---

[1] Even if the state court has entered a judgment in the foreclosure proceeding, this district has previously applied *Rooker-Feldman* to dismiss claims which asked the court to review and set aside the foreclosure action, which Plaintiff has not done in the instant case. *See Locklear v. Fed. Home Mortg. Corp.*, No. 7:16-CV-344-D, 2017 WL 1737634, at *3–5 (E.D.N.C. May 1, 2017) (dismissing the complaint based on *Rooker-Feldman* where plaintiff sought review and reversal of the state court foreclosure order, and alternatively holding that the complaint should be dismissed based on res judicata and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6)); *see also Hardin v. Bank of Am., N.A.*, No. 7:16-CV-75-D, 2017 WL 44709 (E.D.N.C. Jan. 3, 2017); *Wilson v. LNV Corp.*, No. 7:15-CV-216-FL, 2015 WL 9223117 (E.D.N.C. Dec. 17, 2015).

11

exercise of jurisdiction. *See Vicks*, 676 F. App'x at 169 (holding that the district court erred in applying the *Rooker-Feldman* doctrine to dismiss plaintiff's RESPA and state law claims, stating that "[w]hile success on these claims could call into question the validity of the state court's May 2011 order authorizing foreclosure, the claims do not seek appellate review of that order or fairly allege injury caused by the state court in entering that order."); *Madukwe v. Capital One Fin. Corp.*, No. GJH-16-767, 2017 WL 1133276, at *2–8 (D. Md. Mar. 24, 2017) (declining to dismiss plaintiff's fraud, civil conspiracy, tortious interference with contract, Maryland Consumer Debt Collection Act, Maryland Consumer Protection Act, RESPA, and FDCPA claims based on *Rooker-Feldman* due to a prior state court foreclosure judgment but dismissing the complaint based on res judicata, noting that plaintiff had the ability to raise the claims asserted in the federal action in the foreclosure proceeding, and she had in fact raised the same issues during that action); *Neto v. Rushmore Loan Mgmt. Servs.*, No. DKC-16-1056, 2017 WL 896890, at *2–7 (D. Md. Mar. 7, 2017) (declining to dismiss plaintiff's RESPA, negligence and civil conspiracy, Maryland Consumer Debt Collection Act, Maryland Consumer Protection Act, and FDCPA claims based on *Rooker-Feldman* due to a previous state court foreclosure judgment "[b]ecause the harm alleged is distinct from the foreclosure judgment," but ultimately dismissing the complaint based on res judicata); *Wilson v. LNV Corp.*, No. 7:14-CV-145-FL, 2015 WL 751606, at *5–8 (E.D.N.C. Feb. 23, 2015) (declining to dismiss plaintiff's North Carolina Debt Collection Act and FDCPA claims pursuant to *Rooker-Feldman* based on a previous foreclosure judgment and noting that "the instant dispute may involve issues that were litigated in state court, [but] those issues are properly subject to preclusion principles," and ultimately dismissing the complaint for failure to state a claim pursuant to Rule 12(b)(6)). Accordingly, while preclusion might support dismissal of Plaintiff's claims, that argument

has not been raised by the parties and Plaintiff has presented independent claims in the instant case, such that the *Rooker-Feldman* doctrine does not support dismissal for lack of subject-matter jurisdiction. It is thus recommended that Defendants' motion to dismiss based on the *Rooker-Feldman* doctrine be denied.

**B.   Motion to Stay**

Defendants argue that judicial economy supports staying the instant case until resolution of the foreclosure action and the stayed state court action. Defs.' Mem. [DE-59] at 6–7. Defendants rely on the "first-to-file" rule, which they acknowledge does not apply to matters filed in both state and federal court, and cite to *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007), *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 F. App'x 443 (6th Cir. 2001), *Kinney v. Dole Packaged Foods, LLC*, No. 5:14-CV-05182, 2014 WL 6859734 (W.D. Ark. Oct. 23, 2014), and *Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686 (E.D. Tenn. 2005) in support of their argument. The first-to-file rule provides that an "action filed first in time [in a federal district court] receives priority over a later filed action" in a separate federal district court. *Mad Panda, LLC v. Gunnar Optiks, LLC*, No. 5:14-CV-470-F, 2015 WL 4713243, at *3 (E.D.N.C. Aug. 7, 2015) (citing *Ellicot Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 180 (4th Cir. 1974)). Defendants are correct that the first-to-file rule does not apply to the instant case, and accordingly the cases cited applying that doctrine do not support staying the case pending resolution of the foreclosure proceeding and the stayed state court action.

Defendants do cite to *Colorado River*, "which allows a district court to abstain where parallel litigation exists in federal and state court and exceptional circumstances warrant abstention." *Gannet*

13

*Co. v. Clark Constr. Grp.*, 286 F.3d 737, 740 (4th Cir. 2002) (footnote omitted). However,

> [f]or a federal court to abstain under the *Colorado River* doctrine, two conditions must be satisfied. As a threshold requirement, there must be parallel proceedings in state and federal court. *Colorado River*, 424 U.S. at 813. Second, "exceptional circumstances" warranting abstention must exist. *Id.* Without establishing a rigid test, the Supreme Court has recognized several factors that are relevant in determining whether a particular case presents such exceptional circumstances: (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights. *Id.* at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 23, 26 (1983).

*Id.* at 741 (internal parallel citations omitted). While the *Colorado River* doctrine might support abstention in the instant case, Defendants have not presented an argument addressing the relevant factors and the undersigned declines to analyze those factors in the first instance where they have not been previously addressed by the parties. Accordingly, it is recommended that Defendants' request to stay the case be denied.

## V. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Defendants' Motion for Summary Judgment [DE-57] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties' counsel. Each party shall have until **September 4, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P.

72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This, the 21 day of August 2017.

Robert B. Jones, Jr.
United States Magistrate Judge