IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-180-FL

| | | |
|---|---|---|
| MARGARET REAVES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| AMERICAN HOME MORTGAGE | ) | |
| SERVICING, INC. and OCWEN | ) | |
| LOAN SERVICING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendant's motion for summary judgment. (DE 57). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that the court deny defendant's motion. Defendants timely filed objections to the M&R[1], and the issues raised are ripe for ruling. For the reasons that follow, the court accepts the recommendation in the M&R, and denies defendant's motion.

**STATEMENT OF THE CASE**

Plaintiff, proceeding pro se, commenced this action April 28, 2015, asserting violations of federal consumer protection law, breach of contract, and related state law torts against defendants

---

[1] Plaintiff also objected to the M&R (DE 75-1). However, plaintiffs' objections address factual matters not pertinent to magistrate judge's determination that defendants' motion for summary judgment should be denied. Rather, plaintiff objects, primarily, to the magistrate judge's recitation of certain facts referencing defendants' contentions that plaintiff failed to make mortgage payments on time. In this manner, plaintiff's objections constitute an attempt to litigate the merits of claims, which issues are not now before the court. Therefore, the court does not address information presented in plaintiff's objections at this juncture.

American Home Mortgage Servicing, Inc. ("AHMSI") and Ocwen Loan Servicing, LLC ("Ocwen"). Plaintiff's claims arise from defendants' alleged failures to service properly a loan secured by property located at 2521 Springhill Ave, Raleigh, North Carolina ("2521 Springhill Ave property"). Plaintiff seeks compensatory and punitive damages.

Plaintiff initiated prior action asserting similar claims against AHMSI in the General Court of Justice, Superior Court Division, for Wake County on April 1, 2014, alleging that AHMSI failed to properly credit her mortgage payments in violation of the North Carolina Unfair and Deceptive Trade Practices Act. Reeves v. Am. Home Mortg., Inc. ("Reaves I"), No. 14 CVS 4069; see App. to Defs.' Stmt. of Material Facts ("SOMF") Ex. A (DE 62-1). On May 29, 2014, the trustee for non-party Option One, which was the original servicer for the loan, initiated foreclosure proceedings against the 2521 Springhill Ave property in Wake County Superior Court. In re Foreclosure of Real Property Under Deed of Trust from Margaret W. Reeves ("the foreclosure proceeding"), Notice of Hr'g., No. 14 SP 1727; see App. Defs.'s SOMF Ex. B (DE 62-2). On December 29, 2014, the Wake County Superior Court stayed Reaves I pending resolution of the foreclosure proceeding. Reaves I, No. 14 CVS4069, Dec. 29, 2014 Order; see App. to Defs.' SOMF Ex. C (DE 62-3). The record taken into this court indicates that the foreclosure proceeding remains pending. (DE 77-2 at 3). Nothing before the court indicates that the stay of Reaves I has been lifted.

On June 25, 2014, plaintiff filed a complaint against Wells Fargo Bank, Trustee Services of Carolina, and Brock and Scott in Wake County Superior Court alleging that those defendants did not credit properly plaintiff's payments for property taxes, and, as a result, she overpaid her taxes. Reeves v. Wells Fargo Bank ("Reaves II"), No. 14 CVS 8427; see App. to Defs.' SOMF Ex. D (DE 62-4). Plaintiff filed a third action August 26, 2014, against Sand Canyon Corporation, Dale

Sugimoto, Brock and Scott, and Ocwen Loan Servicing, alleging that the defendants filed a fraudulent affidavit with the Wake County Register of Deeds on April 7, 2014, in connection with the foreclosure proceeding. Reeves v. Sand Canyon Corp. ("Reaves III"), No. 14 CVS 11169; see App. to Defs.' SOMF Ex. F (DE 62-6). On December 29, 2014, the Wake County Superior Court dismissed Reaves II and Reaves III with prejudice. Reaves II, No. 14 CVS 8427, Dec. 29, 2014 Order; see App. to Defs.' SOMF Ex. E (DE 62-5); Reaves III, No. 14 CVS 11169, Dec. 29, 2014 Order, App. to Defs.' SOMF Ex. G (DE 62-7).

In this case, standing as Reaves IV, defendants filed the instant motion November 30, 2016, asserting that plaintiff's claims are barred by the Rooker-Feldman doctrine and res judicata, or, in the alternative, that the court should stay this action pursuant to Colorado River abstention pending resolution of the foreclosure proceeding. In support of their motion, defendants rely upon the state court files and plaintiff's complaint. Plaintiff's response in opposition does not address defendants' arguments, but constitutes an attempt to present evidence pertinent to the merits of her claims.

### STATEMENT OF THE UNDISPUTED FACTS

The court incorporates as follows the statement of facts set forth in the M&R, where such statement accurately reflects the evidence of record:

> Plaintiff's claims relate to actions taken by Defendants in the course of servicing her mortgage loan, including during foreclosure proceedings in North Carolina state court. Plaintiff and her now-deceased husband obtained a loan for $117,600.00 from First Greensboro Home Equity, Inc. on or about December 23, 2002, secured by Plaintiff's residence. Am. Compl. [DE-38] ¶¶ 17, 19. At the time of origination, Option One was the servicer of the loan, and AHMSI became the servicer on or about May 2008. *Id.* ¶¶ 20, 36. AHMSI changed its name to Homeward Residential Holdings in December 2012, and was acquired that same month by Ocwen's parent corporation (Ocwen Financial Corporation). *Id.* ¶¶ 2-3. On or about June 7, 2013, Plaintiff received a letter from Ocwen on behalf of Homeward Residential informing her that she was delinquent on the loan by 21 payments. *Id.* ¶ 54. According to Plaintiff, Defendants violated federal, state, and common law in

3

connection with servicing Plaintiffs mortgage loan by wrongfully taking the following actions:

> (i) adjusted escrow withholdings in amounts and at times that are not permitted; (ii) failed to respond to inquiries by [P]laintiff within the time required by law; (iii) when they did respond, Defendants failed to do so timely as required by law; (iv) failed to properly credit payments received from [P]laintiff; (v) failed to notify Plaintiff [that] payments received from her were not being credited, but rather held for an unreasonable duration of time; (vi) failed to return funds which Defendants [were] under [an] obligation to return; (vii) making written and verbal false and misleading statements as to the amount owed and status of Plaintiff's account; (viii) notified Plaintiff that they and other Defendants had commenced foreclosure or other proceedings, notwithstanding that they were not permitted to commence those proceedings; (ix) failed to timely and clearly advise Plaintiff of changes to her obligations predicated upon Defendants' files; and (x) frustrated and/or harassed Plaintiff who attempted to find out more information concerning her mortgages and her rights and obligations [thereunder].
> *Id.* ¶ 14.

Specifically, Plaintiff claims that Defendants violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* by failing to respond to qualified written requests sent by Plaintiff, Am. Compl. [DE-38] ¶¶ 60-66; violated the Truth in Lending Act ("TILA");15 U.S.C. § 160.1 *et seq.,* by failing to provide required notices, Am. Com pl. [DE-3 ¶¶ 67-7]; violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S. C. § 1692 *et seq.,* by making false and misleading representations to Plaintiff about the character, amount, and legal status of her debt, Am. Compl. [DE-38] ¶¶ 72–80; violated the North Carolina Fair Debt Collection Practices Act ("NCDCPA"), N.C. Gen. Stat. § 75-50 *et seq.,* by engaging in unfair acts in collecting Plaintiff's debt, Am. Compl. [DE 38] ¶¶ 81–87; violated the North Carolina Unfair and Deceptive Trade Practices Act ("NC UDTPA"), N.C. Gen; Stat.§ 75-1.1 *et seq.,* by failing to properly credit Plaintiff's account, charging unauthorized fees and costs, and sending false and misleading communications, Am. Compl. [DE-38] at ¶¶ 88-94; breached Plaintiffs contract by improperly crediting Plaintiff's account, charging unauthorized fees and costs, and attempting to foreclose on Plaintiff's residence when she was not in default, Am. Compl. [DE-38] ¶¶ 95–99; breached the implied covenant of good faith and fair dealing by acting to deprive Plaintiff of her contractually-bestowed benefits and preventing her from fulfilling her contractual obligations, *Id.* ¶¶ 100–04; and acted negligently in the course of servicing Plaintiff's mortgage loan, *Id.* ¶¶ 105–09. Plaintiff seeks monetary relief, to include actual, statutory, compensatory, and punitive damages, costs, and attorney's fees. *Id.* at 23-24 ¶¶ 1–10.

(DE 73 at 2-4).

# DISCUSSION

A.   Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

To assist in its review of a dispositive motion, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify,

6

in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.  Analysis

   1.  Rooker-Feldman Doctrine

Under the Rooker-Feldman doctrine, district courts lack subject matter jurisdiction to hear actions "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine applies only "when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." Davani v. Va. Dep't of Transp., 434 F.3d 712, 713 (4th Cir. 2006). By contrast, the doctrine does not apply where a federal plaintiff asserts a claim independent of the prior state claim, such as where the injury complained of in federal court was caused by a third party rather than by the state court judgment itself. See Exxon, 554 U.S. at 293; Davani, 434 F.3d at 719.

Defendants lodge no specific objection to the magistrate judge's determination that plaintiff's claims are not barred by the Rooker-Feldman doctrine; rather, defendants' merely note general disagreement with the magistrate judge's determination and proceed to advance argument under principles of res judicata not raised before the magistrate judge. (See DE 77 at 4). Accordingly, the court finds that arguments set forth in plaintiff's objections pertaining to the Rooker-Feldman doctrine raise no issues for the court to review de novo. See Orpaino, 687 F.2d at 47. Therefore, the court adopts in full the analysis set forth in section IV.A. of the M&R concluding that the Rooker-Feldman doctrine presents no bar to plaintiff's claims, where said claims constitute

7

independent legal action vis a vis her earlier claims and do not seek impermissible appellate review of claims previously decided in state court. See Exxon, 554 U.S. at 293.

   2.   Res Judicata

In their objections, defendants assert, for the first time, that plaintiff's claims are res judicata barred, where the Wake County Superior Court dismissed Reaves II and Reaves III, with prejudice. "Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 162 (4th Cir. 2008). Under North Carolina law, "a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." Whitacre P'Ship v. Biosignia, Inc., 358 N.C. 1, 15 (2004). The doctrine bars relitigation of all matters that were actually determined or, "in the exercise of due diligence could have been presented for determination in the prior action." Bockweg v. Anderson, 333 N.C. 486, 498 (1993). "A dismissal with prejudice is an adjudication on the merits and has res judicata implications." Caswell Realty Assocs. I, L.P. v. Andrews Co., 128 N.C. App. 716, 720 (1998).

In the instant matter, plaintiff's claims are not res judicata barred because plaintiff does not seek to relitigate claims dismissed in Reaves II or Reaves III. Plaintiff's complaint in Reaves II includes allegations of improper mortgage servicing based upon largely the same facts alleged in the instant matter. Compare, Reaves II, Pl.'s Compl. ¶¶ 3–23, No. 14 CVS 8427 (DE 62-4) (alleging improper mortgage servicing between 2008 and 2014)), with (DE 38 ¶¶ 17–59 (same)). However, the caption of Reaves II, both as it appears on the face of the complaint and upon the Superior Court's order dismissing the case with prejudice, indicates that none of the defendants in this matter were parties to Reaves II. See Reaves II, Pl.'s Compl., No. 14 CVS 8427; App. Defs.' SOMF Ex.

8

D (DE 62-4) (captioned defendants consisting of Wells Fargo Bank, Trustee Services of North Carolina, and Brock and Scott); id., Dec. 29, 2014 Order; App. to Defs.' SOMF Ex. E (DE 62-5) (same). Defendants direct the court's attention to no evidence establishing that any Reaves II defendant is identical to or in privity with any party appearing here, and the court's independent review of the record discloses no such identity or privity, either. Accordingly, plaintiff's claims are not res judicata barred based upon earlier dismissal of Reaves II. See Whitacre, 358 N.C. at 15.

With respect to Reaves III, defendants argue that plaintiff's claims are res judicata barred where plaintiff's complaint in Reaves III alleged facts pertaining to servicing of plaintiff's loan and where defendant Ocwen appeared as a defendant in Reaves III. This argument fails, however, because plaintiff's claims in Reaves III, in fact, arose out of alleged false affidavits filed in the foreclosure proceeding and did not embrace underlying allegations of improper loan servicing. See Reaves III, Compl. at 1–2, No. 14 CVS 11169; App. Defs.' SOMF Ex. F (DE 62-6). Thus, the Wake County Superior Court did not adjudicate plaintiff's underlying claims of improper loan servicing. See Bockweg, 333 N.C. at 498.[2]

Defendants argue that the instant action is precluded based upon dismissal of Reaves III on the ground that plaintiff's claims in that action should be read broadly to embrace plaintiff's

---

[2] Defendants do not argue expressly that, in the alternative, plaintiff's claims "could have been brought" in the dismissed actions. See Bockweg, 333 N.C. at 498. The court considers res judicata on this alternative basis waived. See State v. Mackenzie, 292 N.C. 170, 176 (1977) ("[T]he defense of res judicata is waived unless properly raised in the trial court."). In any event, this case presents an anomalous fact pattern where plaintiff indeed asserted her underlying claims of improper loan servicing in Reaves I, which presently is stayed, but did not reassert those claims in Reaves III, which was dismissed. Defendants cite no authority suggesting that a plaintiff complaining of injuries occurring after the filing date of a pending lawsuit (here Reaves I) must re-allege the same claims in a later lawsuit (here Reaves III) to avoid preclusive consequences in the event the later-filed action is decided on the merits before the earlier-filed action is adjudicated, as here. On the unusual facts of this case, where the state court could have managed the state cases differently, such as through consolidation of cases, dismissal of the instant action based upon res judicata is unwarranted. See Bockweg, 333 N.C. at 498; see also 18 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4404 (3d. ed. 2017) ("[C]omplicated questions may arise when – through inattention or poorly managed strategic maneuvering – the parties and courts stumble into situations that are not readily answered either by preclusion theory or by common sense.").

9

underlying claims of improper loan servicing. However, although the complaint in Reaves III makes reference to plaintiff's underlying claims of improper loan servicing, see Reaves III, No. 14 CVS 11169; see App. Defs.'s SOMF Ex. B (DE 62-2) ("I have been fighting for my home since 2009")), the facts alleged in that complaint are germane to plaintiff's allegation that the Reaves III defendants filed a false affidavit April 7, 2014, in connection with the foreclosure proceeding. Therefore, defendants' argument that the Wake County Superior Court's dismissal with prejudice of Reaves III embraces claims asserted in this action is without merit.

      3.     Colorado River Abstention

Under the doctrine of Colorado River abstention, a district court may "abstain where parallel litigation exists in federal and state court and exceptional circumstances warrant abstention." Gannet Co. v. Clark Constr. Grp., 286 F.3d 737, 740 (4th Cir. 2002) (internal citations omitted). "The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." vonRosenberg v. Lawrence, 849 F.3d 163, 167 (4th Cir. 2017) (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)). Thus, "[t]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). "The Supreme Court has recognized several factors that are relevant in determining whether a particular case presents such exceptional circumstances: (1) jurisdiction over the property; (2) inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal law is

implicated; and (6) whether the state court proceedings are adequate to protect the parties' rights." Gannet, 286 F.3d at 741.

In the instant matter, multiple factors weigh against abstention. First, this in personam action does not invoke the court's jurisdiction over any property, as does the foreclosure proceeding. See id.; see also Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466–67 (1939) (holding concurrent litigation between state and federal courts permissible for actions in personam but that "if the two suits are in rem, or quasi in rem, . . . the jurisdiction the one court must yield to that of the other."). Second, defendants concede that this forum is not inconvenient. See Gannet, 286 F.3d at 741. Third, three counts of the complaint assert violations of federal law; thus, "federal law is implicated[.]" See id. The court also finds that abstention would serve to minimize piecemeal litigation, that the Wake County Superior Court first obtained jurisdiction over some of plaintiff's claims, and that the state court proceedings are adequate to protect the parties' rights, which factors each weigh in favor of abstention. See id. However, none of the foregoing factors weighing in favor of abstention are out of the ordinary for any parallel litigation in the state and federal courts; therefore, in light of all the Gannet factors, defendants have not demonstrated the presence of "exceptional circumstances" justifying abstention. See Gannet, 286 F.3d at 741.

Defendants' argument to the contrary, which emphasizes efficiencies gained by allowing the foreclosure proceeding and Reaves I to proceed to judgment before continuation of this action, does not overcome the strong presumption that this court will exercise its jurisdiction when a claimant properly invokes it. See Colorado River, 424 U.S. at 813. Therefore, defendants' request for stay under abstention principles is denied.

**CONCLUSION**

Based upon the foregoing, the court ACCEPTS the recommendation in the M&R and DENIES defendants' motion for summary judgment (DE 57). Where claims remain for trial, in accordance with case management order entered September 25, 2015, this case now is ripe for entry of an order governing deadlines and procedures for final pretrial conference and trial. The parties are DIRECTED to confer and file within 14 days from the date of this order a joint status report informing of 1) estimated trial length; 2) particular pretrial issues which may require court intervention in advance of trail, if any; and 3) three suggested alternative trial dates. In addition, the parties shall specify if they wish to schedule a court-hosted settlement conference or additional alternative dispute resolution procedures in advance of trial, and if so the date for completion of such. Finally, the parties shall inform whether any additional discovery may aid resolution of the case.

SO ORDERED, this the 29th day of September, 2017.

LOUISE W. FLANAGAN
United States District Judge